# Richmond

## WILLIAM POULOS V. COMMONWEALTH OF VIRGINIA.

January 8, 1940.

Record No. 2205.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and
Spratley, JJ.

*Thomas L. Woodward,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

William Poulos was indicted for arson, tried, convicted, and sentenced to five years in the penitentiary. There are many assignments of error but the determinative one is whether or not the verdict and judgment are supported by sufficient evidence.

Mary T. Poulos, the wife of the accused, operated a restaurant and soft drink business known as Liberty Luncheonette on West Washington Street in Suffolk. This business was conducted in an old frame building which had been to some extent remodeled and enlarged. It was owned by one Joe E. Holland. The accused assisted his wife in the business, attending to the kitchen and performing the duties of cook. The family of the accused resided in the building which had bed-rooms behind the kitchen and on the upper floor. They had a grown daughter (by a former marriage of Mrs. Poulos) named Viola.

On July 18, 1938, between one and two o'clock A. M., the accused and L. D. Jones were sitting on a bench in an alley between the luncheonette and a garage. Later the accused entered the restaurant building to retire, and some 35 or 40 minutes later Jones heard the sound of cracking glass in the alley. A little while after hearing this noise, he made an investigation and discovered smoke and fire coming from the back window of the luncheonette. The fire alarm was sounded and the fire department with a truck and ladder arrived. The firemen, upon reaching the scene of the fire, discovered the accused on the roof of the building with his step-daughter, Viola. His clothes, consisting of underwear and trousers, were on fire, and he was seriously burned.

After the fire was extinguished, the fire chief made an examination of the building in an effort to discover the cause of the fire. Near the head of the stairway on the second floor, he found a can about three-quarters full of a mixture of gasoline and moth balls. He also ascertained that there had been two fires in the building, one upstairs and the other downstairs, and that there was no connection between them.

The accused was taken to the hospital for treatment and while there and later at his home he was questioned by the deputy state fire marshal concerning the origin of the fire. He told the deputy fire marshal that he knew nothing of the fire downstairs but that he was awakened by smoke and heat while in bed upstairs and that he looked for his stepdaughter, Viola, and got her out of her room. His statement to the fire marshal was contradicted by other testimony to the effect that the bed in which the accused was supposed to have slept had not been disturbed.

The accused did not testify in the case. Mary Bembry, a servant, testified that on July 14, 1938, four days before the fire, she had worked for Mrs. Poulos cleaning and spraying the beds with a mixture of gasoline and moth balls. What remained of the fluid was left downstairs, and she intended to return on July 18 to finish this work.

The Commonwealth relies entirely upon circumstantial evidence. In addition to what has been stated, the Commonwealth proved that the creditors of the luncheonette business were pressing for the payment of their claims. It was shown that six different obligations were in the process of collection and that the wife of the accused had borrowed money on household furniture, incurring a total indebtedness of $950. It was also shown that she instituted suits on fire insurance policies which covered the furniture and fixtures to the extent of some $3000. A chattel mortgage securing $200 had been placed on certain furniture by the accused but it was not shown that this furniture was in the building which was burned.

■ The evidence does not satisfactorily support the verdict and judgment in that it fails to point out definitely the guilty agent beyond a reasonable doubt.

■ In order to make out a case of arson it is essential not only that the evidence reveal that the fire was of incendiary origin, but it must also point unerringly to the guilty party. We may assume that the fire here was of incendiary origin yet the evidence does not show beyond a reasonable doubt that the accused started it.

The learned trial judge in passing upon the sufficiency of the evidence had this to say: "It (the evidence) is not satisfactory, but I am going to let the jury pass upon it. I don't know what I will do if it comes to me * * *." Later, however, the trial court after mature consideration overruled a motion to set aside the verdict.

The origin of the fire was not explained. The fact that there were two separate and unconnected fires in the building at the time is a suspicious circumstance but it is neither proof beyond a reasonable doubt that they were incendiary nor proof that the accused was guilty of burning the building. Likewise, the finding of a can partly filled with gasoline and moth balls on the stairway does not supply the essential proof. It was not shown that the accused knew of the existence of this mixture or that it was used in setting the building on fire. Its presence was explained by uncontradicted testimony. There is no evidence from which the conclusion could be reasonably inferred that it was used to start the fire. The fact that the accused was seriously burned and was found on the roof with his stepdaughter seems consistent with his innocence. In fact there is an entire absence of proof to show that the accused set out the fires. It is true that his statement to the deputy fire marshal to the effect that he was in bed when the fires started was contradicted by the testimony of other witnesses which tended to disclose that the bed had not been occupied, yet this like the other circumstances was only suspicious, nothing more.

██ Proof of the claims being asserted by the creditors against Mrs. Poulos, who was, so far as the record discloses, the owner of the business, and evidence of the chattel mortgages made by her, were not sufficient to establish a motive on the part of the accused, nor was proof of the actions instituted by Mrs. Poulos against the insurance companies relevant upon his trial.

██ In *Jones* v. *Commonwealth*, 103 Va. 1012, 1013, 49 S. E. 663, 665, the following apt quotations were approved: " 'The prisoner is presumed to be innocent until his guilt is established, and he is not to be prejudiced by the inability of the Commonwealth to point out any other criminal agent, nor is he called upon to vindicate his own innocence by naming the guilty man. He rests secure in that presumption of·innocence until proof is adduced which establishes his guilt beyond a reasonable doubt, and whether the proof be direct or circumstantial, it must be such as excludes any rational hypothesis of the innocence of the prisoner.' *McBride* v. *Commonwealth*, 95 Va. [818] 826, 30 S. E. 454.

██ " 'The rule in criminal cases is that the coincidence of circumstances tending to indicate guilt, however strong and numerous they may be, avails nothing unless the *corpus delicti*, the fact that the crime has been actually perpetrated, be first established. So long as the least doubt exists as to the act there can be no certainty as to the criminal agent.' 1 Starkie on Ev., 510.

██ " 'Evidence only that a fire was incendiary, that the defendant had an opportunity to commit the crime, and that he cherished ill feelings towards the owner of the property destroyed, does not warrant a conviction.' *Garner* v. *Commonwealth*, 2 Va. Dec. 458, 26 S. E. 507.

██ " 'Where a building is burned, the presumption is that the fire was caused by accident rather than by the act of the accused accompanied by a deliberate intent.' 3 Cyc., 1003."

In the *Jones Case* in commenting upon the lack of proof of arson, the court speaking through Judge Cardwell concluded: "It is true, as counsel contend, and unfortunately

so, 'that in the nature of things it is generally extremely difficult to prove by direct testimony that an incendiary who sets fire to his neighbor's property actually started the conflagration,' and this kind of proof is not required to convict of the crime of arson; but the coincidence of circumstances relied on to convict, however strong and numerous, must conclusively prove (1) the fact that the crime has been perpetrated, and (2) that the accused is the guilty party."

See also, *Stine* v. *Commonwealth*, 162 Va. 856, 174 S. E. 758, where reference is made to a number of relevant cases.

The judgment is reversed and the case is remanded to the trial court with the direction that the prosecution be dismissed unless additional evidence can be produced.

*Reversed and remanded.*