## Richmond

JAMES E. COOK

V.

COMMONWEALTH OF VIRGINIA

December 2, 1983.

Record No. 830581.

Present: All the Justices.

*Edward D. Barnes; Gregory L. Rupe (Englisby & Barnes,* on brief), for appellant.

*Roger L. Chaffe, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

Tried by a jury, James E. Cook was convicted of arson of an unoccupied dwelling in the nighttime (Code § 18.2-77) and of arson of personal property with intent to defraud an insurance company (Code § 18.2-81). The sole issue presented by his appeal is whether the evidence was sufficient to support the convictions.

The evidence was entirely circumstantial. We review it, as we must, in the light most favorable to the Commonwealth.

In 1981, Jack Osmond and his wife were the owners of a duplex residential building at the intersection of Atlantic Avenue and 65th Street in Virginia Beach. In August 1981, they rented the downstairs apartment to Cook and a man named Mazza. The Osmonds had difficulty collecting the rent each month, culminating in the receipt of a rent check from Cook which was returned as being written on a "closed account."

Osmond went to the apartment in mid-December to try to collect the delinquent rent. Mazza had moved out at the end of November and a man named Tholand was living there with Cook. Cook was not present, but Tholand opened the door. Osmond found the carpet rolled up, personal belongings packed in boxes, and the pictures removed from the walls. Concluding that Cook was preparing to move out without paying the rent, Osmond secured a distress warrant which the sheriff levied on the personal property in the apartment on December 17. Later that day Tholand informed Cook of the levy.

Meanwhile, the defendant and Tholand had moved to a motel on December 13. On December 22, Cook caused the electric service to the apartment, which had been billed in his name, to be disconnected.

The defendant obtained a written binder for a policy of "renter's insurance" on the personal property in the apartment from J. H. Barnes, an agent for Nationwide Mutual Fire Insurance Company. He had earlier discussed such insurance with

Barnes, but did not come to Barnes' office to obtain issuance of the written binder until December 22. Barnes testified that he would not have issued the insurance if he had known that the insured property had been subjected to the levy of a distress warrant, or that the occupants of the apartment had moved out, leaving it vacant, but Cook concealed these facts from him. Although Cook had been continuously delinquent in his rent, and had delivered a check on a closed account for his last rent payment, he wrote a good check for the fire insurance premium, which Barnes received on January 2, 1982 after the fire had occurred.*

On December 27, Cook left the motel room in which he and Tholand were staying and went to the apartment, arriving sometime after 8:00 p.m., when it was dark. He told an investigator that a key was always left under an outside doormat, and that he used it to enter. He used a cigarette lighter to light his way into a bedroom because the electric service had been discontinued. He said he picked up two bow ties and promptly left. He said he noticed nothing amiss in the apartment and denied smoking while there. He returned to the motel room after an absence of about forty-five minutes. Soon after his return, several fire trucks went by the motel, bound north on Atlantic Avenue in the direction of the apartment. Tholand commented to Cook as to the loud noise made by the sirens.

Michael W. Wade, a lieutenant in the Virginia Beach Fire Department, qualified as an expert witness in the field of fire investigation. He testified that the department received a report of a fire at Atlantic Avenue and 65th Street at 9:18 p.m. on December 27, that the fire equipment arrived at the scene four minutes later, and that the blaze was extinguished within an hour and fifteen minutes. Based upon his analysis of the extensive damage, he gave testimony tending to eliminate any possibility of accidental origin, such as electrical malfunction (electric service was disconnected outside the building), cooking accidents, heating malfunctions, spontaneous ignition of fermenting matter, or Act of God (the weather was clear and cold; there were no storms in the area). In

---

* Barnes testified, however, that he wrote a letter to Cook on December 22, binding the coverage for ten days pending the issuance of a policy, and that this made the insurance effective immediately, even though the premium was not yet paid. Barnes also recalled that Cook told him that the premium check was in replacement for an earlier check which Cook said he had mailed promptly upon receipt of the binder, but which Cook said had evidently been "lost in the mail."

his opinion the fire originated rapidly on top of a sofa in the living room. He explained that the evidence was inconsistent with the type of slow, smoldering fire caused by a burning cigarette accidentally dropped onto upholstered material. He classified all fires as either accidental or incendiary in origin. Although he was not permitted to express an opinion as to the actual cause of the fire in question, his testimony, if accepted by the jury, would have eliminated any reasonable hypothesis of an accidental cause.

After the fire was extinguished, Wade found a key in the exterior deadbolt lock on the front door of the apartment. He noticed a pistol and a pair of stereo speakers in a box on the kitchen table. After he left the building he sat for a while in a police car at the corner of Atlantic Avenue and 65th Street. While there, shortly before midnight, he saw a green Volvo station wagon turn off Atlantic Avenue onto 65th Street, go slowly past the burned building, then turn around and leave the area. He noted the license number. The car turned out to be one which Cook had borrowed and was driving that night. When Wade returned to the apartment the next morning, the pistol and stereo speakers were missing.

Cook appeared in the same green Volvo at the fire station the next day for an interview with Wade. He specifically denied having any insurance on the damaged property.

On January 14, 1982, Cook went to Nationwide's claims office in Norfolk and filled out a sworn proof of loss. Although some of the property burned belonged to Tholand and the destroyed sofa belonged to a woman who lived in the upstairs apartment, Cook represented himself as the sole owner of the damaged property. He returned the next day and picked up Nationwide's check in the amount of $3,368.09 in settlement of his claim.

The defense introduced no evidence to controvert the facts set forth above.

Cook points out that the Commonwealth has, in an arson prosecution as in any other criminal case, the dual burden of proving beyond a reasonable doubt both *corpus delicti* and criminal agency. *Jones* v. *Commonwealth,* 103 Va. 1012, 1021, 49 S.E. 663, 666 (1905). The *corpus delicti* must consist of proof that the fire was of incendiary, rather than of accidental origin. *Id.* In this respect the defense is aided by a presumption that the fire was caused by accident. *Simmons* v. *Commonwealth,* 208 Va. 778, 782, 160 S.E.2d 569, 572-73 (1968). But as we held in *Knight* v.

*Commonwealth,* 225 Va. 85, 89, 300 S.E.2d 600, 602 (1983), this presumption is rebuttable. The question whether a fire is of incendiary or of accidental origin is a question of fact which must often turn upon the weight of circumstantial evidence.

*Corpus delicti* may be proved circumstantially in any case. *See Epperly* v. *Commonwealth,* 224 Va. 214, 229, 294 S.E.2d 882, 891 (1982). In *Knight,* we held that expert testimony tending to negate any reasonable hypothesis of an accidental cause effectively overcame the presumption of accident and furnished sufficient support for the fact-finder's conclusion that the fire was of incendiary origin. *Knight* controls here, and we find the proof of *corpus delicti* sufficient to support the verdicts.

The defendant cites all the arson cases we have reviewed for sufficiency since 1876 and points out that many were reversed for insufficient proof of *corpus delicti* even though the circumstantial evidence was very strong. Suffice it to say, however, that the fact-finders in the earlier cases were unaided by the kind of expert forensic evidence which was presented in *Knight* and in this case. When a fact-finder has accepted the testimony of a qualified expert witness, which negates every reasonable possibility that a fire was of accidental origin, we cannot hold the evidence insufficient, as a matter of law, to support a finding that the fire was of incendiary origin.

Cook also contends that the Commonwealth failed to prove beyond a reasonable doubt that he was the criminal agent, even if the *corpus delicti* were sufficiently proved. He suggests various inferences which could be drawn from the evidence which, he asserts, create a reasonable hypothesis of innocence. For example, he states that the apartment had been used by many people during the summer to change clothes for the beach and all of them knew the key was kept under the doormat. Any of them could have been in the apartment on the night of the fire. The key under the mat had evidently been used that night; it had been left in the lock. But the jury considered these facts and rejected, as it was fully entitled to do, the inferences Cook contends it should have drawn. It is the province of the jury to determine the inferences to be drawn from circumstantial evidence. *Underwood* v. *Commonwealth,* 218 Va. 1045, 1049, 243 S.E.2d 231, 233 (1978).

Arson is a crime of stealth. The perpetrator is seldom observed, seldom confesses, and, if skillful, leaves few traces of his presence. The proof is often necessarily circumstantial. In such cases the

standard of proof is stringent. Here, the jury was properly instructed that the evidence must exclude every reasonable theory of innocence and that a suspicion of guilt, however strong, even a probability of guilt, was insufficient. That is not to say, however, that circumstantial proof is an inferior species of evidence. It is often more reliable than the accounts of eyewitnesses, and, when convincing, is entitled to the same weight. *Epperly,* 224 Va. at 228, 294 S.E.2d at 890. Although we have reversed many arson convictions in the past because of insufficient proof, arson stands upon no different footing than any other criminal offense. Where circumstantial evidence is sufficient to exclude every reasonable hypothesis of innocence, it is sufficient to support a conviction. The hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of defense counsel. *Turner* v. *Commonwealth,* 218 Va. 141, 148-49, 235 S.E.2d 357, 361 (1977).

We have said, as recently as *Augustine* v. *Commonwealth,* 226 Va. 120, 123, 306 S.E.2d 886, 888 (1983), that the circumstantial evidence of criminal agency in an arson case must "point unerringly" to the defendant. But this amounts to no more and no less than a requirement that the evidence must exclude every reasonable hypothesis of innocence, the standard applicable to every criminal case.

There is no evidence that any person other than Cook was actually present in the apartment on the night of the fire. Thus, his presence, considered in light of all the evidence against him, meets the foregoing standard and is sufficient to support the jury's finding that he was, beyond a reasonable doubt, the criminal agent.

For the foregoing reasons, the judgments appealed from will be

*Affirmed.*

THOMAS, J., dissenting.

Even if we assume for the purpose of argument that the fire was of incendiary origin, I cannot agree that the Commonwealth presented sufficient evidence of criminal agency to support Cook's conviction. The majority opinion attempts to skirt the well-established rule that mere suspicion of guilt, however strong, is not sufficient to convict an accused. As we stated in *Poulos* v. *Common-*

*wealth,* 174 Va. 495, 499, 6 S.E.2d 666, 667 (1940): "In order to make out a case of arson it is essential not only that the evidence reveal that the fire was of incendiary origin, but *it must also point unerringly to the guilty party.*" (Emphasis added.) The majority opinion cuts this principle to shreds.

Here, the evidence does not point unerringly to Cook. One witness testified that there were a number of individuals who frequented the apartment and knew the key was kept under the doormat. Indeed, after the fire, the key was found in the lock on the outside of the door. Moreover, there was also evidence of an individual who had been living in the apartment, and who was forced out of the apartment, against his will, when Cook had the electricity turned off. The inference was that that individual had a motive to seek revenge against Cook.

But even if we discount the opportunity or motive on the part of others to start the fire, the evidence against Cook leaves much to be desired. The most that can be said about Cook is that he admitted being in the apartment on the day of the fire; that a car, similar to one he was later seen driving, passed slowly by the scene of the fire shortly after it was extinguished; that he was having trouble paying his rent; and that he collected on an insurance policy after the fire. This is a far cry from the proof required by this Court, in the past, in cases of this kind.

Certainly the evidence against Cook arouses suspicions. But the circumstances here are no more suspicious than those involved in *Poulos.* There, the Commonwealth's evidence showed that defendant and his wife lived above a restaurant that they operated together. At the time of the fire, creditors were in the process of collecting six different debts owed by defendant and his wife which totaled $950.00. After the fire, defendant's wife sought to collect on a $3,000 insurance policy. In addition to the foregoing, the Commonwealth proved defendant had been outside the restaurant with a friend until 30 to 40 minutes before the fire, at which time he stated that he was going to go to bed. Upon arrival, the fire department found defendant and his stepdaughter on the roof of the building. Defendant's clothing was afire and he was seriously burned. After the fire was extinguished, a can containing gasoline and moth balls was found at the top of the stairway. A housekeeper testified she had used this mixture four days earlier to do some cleaning, but had left the can downstairs. Upon questioning by a deputy, defendant said he was awakened by smoke

and heat while in bed and did not know the origin of the fire. However, other evidence showed that defendant's bed had not been slept in. This evidence was found insufficient to establish that Poulos was the criminal agent. *See also Simmons* v. *Commonwealth,* 208 Va. 778, 160 S.E.2d 569 (1968).

If the evidence against Poulos was insufficient to establish that he was the criminal agent, then the evidence against Cook is equally insufficient. To rule otherwise is to ignore established precedent and to overrule, *sub silentio,* a line of cases stretching back well beyond the turn of the century. *See, e.g., Garner* v. *Commonwealth,* 2 Va. Dec. 458, 26 S.E. 507 (1897). If such cases are to be overruled they should be overruled expressly and not by legal legerdemain.

In light of the foregoing authorities, I am of the opinion that Cook's conviction should have been reversed.