COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia

CARL DARNELL NOEL

MEMORANDUM OPINION[*] BY
v. Record No. 1391-94-2          CHIEF JUDGE NORMAN K. MOON
                                         AUGUST 29, 1995
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LANCASTER COUNTY
Joseph E. Spruill, Jr., Judge

William A. Nunn, III, for appellant.

Robert B. Beasley, Jr., Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Carl Darnell Noel was convicted of two counts of
distribution of cocaine in violation of Code § 18.2-248.  Noel
contends on appeal that the evidence was insufficient to prove
his guilt beyond a reasonable doubt.  For the reasons stated
below, we affirm the convictions.

I.

Michael Conway, a police informant, and Larry Clarke, a
deputy United States Marshal, testified that they were working as
undercover operatives for the Northern Neck Drug Task Force on
August 5, 1993.  At 9 p.m. they saw Noel in a brown Volvo driven
by Chuckie Veney and signalled him to turn into a parking lot.
Conway asked Noel if he was "doing anything," a slang phrase he
described to mean whether Noel had any drugs.  Noel told him to
meet at Davis' Store.  When Conway and Clarke arrived at the

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

store, Conway approached the driver's side of the Volvo. Conway testified that he handed $50 to Noel in exchange for a rock of cocaine. Conway returned to Clarke's vehicle and gave the cocaine to Clarke, who wrapped it in tin foil, and placed it under the floor mat.

Clarke testified that although it was dark, he saw Conway walk to the passenger's side of the Volvo and exchange something on the passenger side of the vehicle. Clark testified that he could not clearly see the face of the person involved in the transaction with Conway. However, he knew that the driver was the same person he had seen earlier.

On August 19, 1993, between 8:00 and 8:30 p.m. Conway and Clarke returned to Davis' Store. Clarke gave Conway $100. When Noel drove up alone in a brown Volvo, Conway got out of Clarke's car and entered Noel's car. While Clarke remained in his car at Davis' Store, Noel and Conway drove away. Conway testified that after they drove away he gave Noel $100 in exchange for a rock of cocaine. When Conway and Noel returned to Davis' Store, Conway went to Clarke's car and gave cocaine to Clarke. Clarke wrapped the cocaine in paper and put it under his floor mat.

## II.

On appeal, we consider the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The

credibility of witnesses and the weight assigned to their testimony are matters left exclusively for the trier of fact, in this case, the trial judge. Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), cert. denied, 444 U.S. 1103 (1980).

Conway testified that he purchased a rock of cocaine from Noel in exchange for $50 on August 5. Clarke's testimony that he saw Conway and Noel exchange something in their hands and that Conway immediately returned with the cocaine corroborated this account. The fact that Clarke testified that he could not clearly see Noel's face does not render his testimony incredible nor does it render Conway's testimony unworthy of belief. "[I]t is for triers of the facts to judge the credibility of a witness." Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989).

Conway testified that Noel sold him cocaine. This evidence is sufficient to convict Noel, despite Conway's admitted drug use during the time he worked for the task force. Both Clarke and Conway testified that Conway was searched prior to each buy. It is immaterial that there were contradictions as to where he was searched. The fact that Conway was searched and found to be clean prior to each buy "'exclude[s] every reasonable hypothesis of innocence.'" Coffey v. Commonwealth, 202 Va. 185, 188, 116 S.E.2d 257, 259 (1960) (citation omitted).

Accordingly, we hold that the evidence was sufficient to

convict Noel of these crimes and affirm the trial judge's decision.

Affirmed.

BENTON, J., dissenting.

The evidence in this case does not "point unerringly" to Noel as the source of the cocaine. Poulos v. Commonwealth, 174 Va. 495, 499, 6 S.E.2d 666, 667 (1940). Thus, it fails to prove the necessary elements of the offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970).

During the ten months that Conway worked as an informant for the Northern Neck Drug Task Force, he used and distributed cocaine; he used powder and crack cocaine and used cocaine to "free base." Conway also testified that he had been a user of cocaine for ten years prior to his work with the drug task force and that his drug use increased after he began assisting the task force. Conway could not "put a number" on the amount of his cocaine usage or on the amount and times he personally distributed cocaine.

The evidence proved that during the ten months Conway and Clarke joined in their venture to buy drugs Conway was also buying drugs for his own use and distribution. Conway testified that he and Clarke were involved in many cases, and that it was "hard to remember each and every detail." Clarke testified that he was unaware that Conway was using cocaine during the period they were buying drugs. He only learned of Conway's activities when Noel's trial began. He also was not aware that Conway was distributing cocaine during the ten month period that Conway was buying drugs for the task force.

- 5 -

The evidence does not prove that Conway had no drugs on his person when he made each transaction. Although Clarke testified that he searched Conway before each occasion they went to buy drugs, he and Conway disagreed as to where the searches occurred. The contradictions in their testimony do not clearly establish when or where the searches occurred and, thus, whether the searches had the expected result.

Clarke testified that he searched Conway in an open wooded area on August 5. He guessed that the search occurred shortly before they met Noel. Conway testified, however, that on August 5 Clarke searched him in Conway's home. Clarke has no recollection of the place where he searched Conway on August 19.

Both Conway and Clarke testified that it was dark when Conway approached the car on August 5. Clarke could not see with whom Conway was making an exchange, and he could not see what was exchanged. After Clarke received the item from Conway, Clarke placed it under a floor mat in the car. Clarke made a stop to make a telephone call before the item was delivered to a deputy sheriff.

On August 19 when Clarke and Conway were driving around looking for drug sellers, Clarke did not see Conway make any exchange. Conway entered the defendant's automobile and went for a ride. When Conway returned he gave Clarke an item that was later identified as cocaine.

Conway did not know the number of transactions that he and

Clarke made on August 5. Clarke did not recall the number of transactions Conway made on August 5 or August 19. However, Clarke testified that on most days there were several transactions. Clarke did not search Conway after he made purchases on August 5 or August 19. All of these transactions in which Conway obtained drugs occurred when Conway, while acting as an informant for the drug task force, used cocaine and distributed cocaine for his own profit. Thus, the evidence does not exclude the reasonable hypothesis that Conway, an admitted user of and dealer in cocaine, did not deliver to the police officer cocaine that he possessed and owned for his own drug use and distribution.

Conway was also paid for each purchase of cocaine that he made for the task force. Conway used the money he received from the drug task force to purchase cocaine to support his cocaine habit. Conway testified that he did not disclose to the task force the names of the sellers who supplied cocaine to him for his personal usage and for his personal distribution. Neither Conway nor any person who supplied his illegal drugs has been charged, prosecuted, or convicted for possession and distribution of drugs.

The evidence in this case proved that Conway was using and dealing the same illegal drugs that he was also procuring for the police. The evidence proved that he had the motive and opportunity for self-serving conduct and testimony. Because the

evidence does not exclude the hypothesis that Conway gave to the police the products of his own illegal conduct, I would hold that the evidence failed to prove beyond a reasonable doubt that he obtained the cocaine from Noel.  Thus, I would reverse the convictions.