COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Bumgardner and Clements
Argued at Chesapeake, Virginia


VINCENT DEPAUL MEDLEY, A/K/A
 DEPAUL VINCENT MEDLEY, A/K/A
 JOHN DEPAUL MEDLEY, A/K/A
 LEE MEDLEY, A/K/A                    MEMORANDUM OPINION[*] BY
 JOHNNY MEDLEY                         JUDGE RICHARD S. BRAY
                                         APRIL 9, 2002
v.   Record No. 1317-01-1

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                     AND COUNTY OF JAMES CITY
               Samuel Taylor Powell, III, Judge

          Sheree Twine Konstantinou (Williamsburg Law
          Group, PLC, on brief), for appellant.

          Amy L. Marshall, Assistant Attorney General
          (Randolph A. Beales, Attorney General, on
          brief), for appellee.


     Vincent DePaul Medley (defendant) was convicted by a jury of

arson in violation of Code § 18.2-81.  On appeal, he challenges

the sufficiency of the evidence to support the conviction.

Finding no error, we affirm.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). The jury's verdict will not be disturbed unless plainly wrong or without evidence to support it. See id. The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

I.

In October 2000, Tracy Bassett was residing with her brother, Bruce Bassett, at his home in James City County. Ms. Bassett and defendant were romantically involved, and he was "staying" in the home "off and on." Ms. Bassett regularly borrowed her brother's automobile, a 1989 Pontiac Firebird, for her purposes and "to carry [defendant] to work in the morning[s]."

On October 27, 2000, Ms. Bassett and defendant argued, he assaulted her, and Bruce Bassett (Bassett) ordered him from the house. Bassett then drove defendant to a nearby store, "dropped him off," and advised he could no longer reside in the home. The following day, defendant visited Ms. Bassett at her employment, noted she "didn't drive [the] car this morning," and

-

commented, "don't worry about it because you'll never drive it again."

At approximately 7:30-8:00 p.m. that evening, defendant returned to the Bassett home in an automobile driven by Melvin Hendrick. An argument ensued between defendant and Ms. Bassett, and he was ordered "to leave." Defendant, a smoker in the "habit" of carrying a "lighter, matches, whatever," asked for a cigarette before exiting the house. Once outside, he returned to Hendrick's car, explained "he was getting kicked out" and requested "a ride some place else." However, Hendrick, aware "something [wasn't] right," declined and drove away, with defendant then alone in the yard.

"About five, ten minutes" later, a neighbor "knocked on the [Bassett] door" and reported Bassett's car was "on fire." Bassett "ran out" and observed "flames coming out the driver's side window of the Firebird," the "front seat on fire." He had seen the vehicle minutes before, parked in the "front . . . lawn," unlocked and with the "driver's window down," and in "perfect condition."

Assistant Fire Marshal John T. Black, Jr., an expert in "the field of arson" assigned to investigate the incident, examined the burned car "in an effort to locate an accidental source of ignition." Black's investigation determined that the fire had originated in the "front seat area of the passenger compartment" and disclosed "no accidental sources." When asked

-

by defendant's counsel, "Based on your scientific training, do you have a reasonable idea of how the fire started?," Black opined that "ordinary combustible materials, paper . . . was [sic] ignited and probably dropped into the front seat of the car."

## II.

At trial and, again, on appeal, defendant contends the evidence was insufficient to support the conviction. We disagree.

To convict for a violation of Code § 18.2-81, "the Commonwealth must prove the fire was of incendiary origin and that the [accused] was a guilty agent in the burning." Augustine v. Commonwealth, 226 Va. 120, 123, 306 S.E.2d 886, 888 (1983). An incendiary fire is one that involves a deliberate or intentional burning of property. See Callahan v. Commonwealth, 8 Va. App. 135, 138, 379 S.E.2d 476, 478 (1989). "Arson is a crime of stealth. The perpetrator is seldom observed, seldom confesses and, if skillful, leaves few traces of his presence." Cook v. Commonwealth, 226 Va. 427, 431-32, 309 S.E.2d 325, 329 (1983). Thus, circumstantial evidence is oftentimes the only proof of the offense.

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d

-

864, 876 (1983). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) (citations omitted). Whether a hypothesis of innocence is reasonable is a question of fact. Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988).

### A. INCENDIARY ORIGIN

Defendant insists the Commonwealth failed to prove the fire had an incendiary origin, arguing that Black, while "rul[ing] out various accidental causes of [the fire]," was unable to "say for sure just how it started." Defendant's argument, however, is belied by the record.

The investigation and related evidence of Assistant Fire Marshal Black disclosed "no accidental sources of ignition for the fire." Further, Black opined, without objection, that paper or like "ordinary combustible material[]" had been ignited and probably dropped in the front seat of the car." "When a fact-finder has accepted the testimony of a qualified expert witness, which negates every reasonable possibility that a fire was of accidental origin, we cannot hold the evidence insufficient, as a matter of law, to support a finding that the fire was of incendiary origin." Cook, 226 Va. at 432, 309 S.E.2d at 328.

-

B.  CRIMINAL AGENCY

Defendant next maintains the Commonwealth's evidence failed to prove the requisite criminal agency, contending the circumstantial evidence did "nothing more than put [defendant] in the yard of the Bassett home prior to the fire."  Again, we disagree.

The evidence clearly established ill will between defendant and Ms. Bassett and her brother.  On the morning of the fire, defendant threatened that Ms. Bassett would "never drive [the car] again."  Later, the same day, despite prior warnings to stay away, defendant returned to the Bassett home, was again ousted, and last seen alone in the darkened yard near the unlocked vehicle, its front window lowered.  Moments later, the car was found ablaze from an incendiary fire that began in the front seat.  Defendant was an habitual smoker, regularly in possession of a lighter or matches.  Such evidence established motive, time, means and opportunity, proof clearly sufficient to support conviction of defendant as the perpetrator.

Accordingly, we affirm the decision of the trial court.

Affirmed.

-