# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 25th day of March, 2021.*

Present: All the Justices

Jeffrey Scott Haas,                                                                                  Appellant,

  against        Record No. 191580
                    Court of Appeals No. 0621-18-2

Commonwealth of Virginia,                                                                    Appellee.

> Upon an appeal from a judgment rendered by the Court of Appeals of Virginia.

Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that there is no reversible error in the judgment of the Court of Appeals.

S.D. accused Jeffrey Scott Haas of raping her in his truck after taking her and her younger sister trick-or-treating on Halloween 2015, when S.D was 15 years old. She accused him of raping her again on January 22, 2016 on her mother's bed while he was babysitting. She accused him of raping her a third time on February 16, 2016, the day after her sixteenth birthday, on her own bed.

Haas was indicted on two counts of taking indecent liberties with a minor with whom he had a custodial or supervisory relationship, in violation of Code § 18.2-370.1, and three counts of rape, in violation of Code § 18.2-61. On Haas' motion to strike the Commonwealth's evidence after it concluded its case-in-chief, the circuit court granted the motion as to the indecent liberties offense on Halloween 2015 and dismissed that charge.

While presenting his defense, Haas sought to call Tammy Barber, S.D.'s aunt, to impeach S.D.'s credibility as a witness. S.D. lived with her mother, Tara Fox, and younger sister, C.F.D., at Barber's house in July 2015. During voir dire outside the presence of the jury, Barber testified that she told Fox to start saving money and to find her own place to live by Halloween. She testified that Fox became upset and that S.D. told Barber that if she didn't leave Fox alone, S.D. would "just go and say that [Barber's boyfriend] put his hands on [S.D.]" Barber testified that she asked S.D. "Why are you gonna tell a lie like that to the police?" and that S.D. answered "I've done it before. I'll do it again." This prompted Barber to ask S.D., "So you're telling me that [C.A.] never touched you, that you lied about that?"[1] According to Barber, S.D. replied that "that's none of your business, but if I did lie I'm getting away with it."

After hearing Barber's proffered testimony, the circuit court confirmed with Haas' counsel that his position was that S.D.'s statement to Barber constituted "an affirmative statement: I have lied. I will lie." The Commonwealth responded that the "it" in the alleged statement "I've done it before. I'll do it again," could not mean lying, because S.D. had never lied about C.A.: the only statement she had made about him was that he had put his hand on her thigh, and he had admitted that statement was true. The court ruled that S.D.'s statement to Barber was "not an assertion by [S.D.] that she's going to lie." She "didn't say, I will lie. I did lie before. I will lie in the future." It therefore ruled that Barber's proffered testimony was inadmissible.

---

[1] C.A. was Fox's previous boyfriend. According to the Commonwealth's counter-proffer, Fox had alleged that C.A. had raped her, not S.D., and that S.D. had never accused him of inappropriate conduct against her. Rather, during the investigation of Fox's accusation, Fox told police that he had put his hand on S.D.'s thigh. S.D. corroborated that statement and C.A. admitted the act. The police and the Commonwealth did not consider it to be criminal conduct.

The jury subsequently acquitted Haas on the Halloween 2015 and February 2016 rape charges, but convicted him of raping S.D. on January 22 and of taking indecent liberties on February 16, 2016. It fixed sentences totaling 23 years' incarceration on the two convictions.

Haas appealed to the Court of Appeals, asserting among other things that the circuit court had erred by excluding Barber's proffered testimony. In a published opinion, *Haas v. Commonwealth*, 71 Va. App. 1 (2019), a panel of the Court of Appeals ruled that the statement was not admissible impeachment evidence under Rules 2:607, 2:608, or 2:610, or *Clinebell v. Commonwealth*, 235 Va. 319 (1988). *Haas*, 71 Va. App. at 10-13. Accordingly, it affirmed the circuit court's judgment. *Id.* at 19. Haas appeals.

Assuming without deciding that the Court of Appeals erred by ruling that Barber's proffered testimony was inadmissible, this Court holds that any such error was harmless.[2]

An appellate court reviews a decision to admit or exclude evidence where no federal constitutional issue was raised under the standard for non-constitutional harmless error provided in Code § 8.01-678. *Clay v. Commonwealth*, 262 Va. 253, 259 (2001). Under that standard, the court "determine[s] whether there has been a fair trial on the merits and whether substantial justice has been reached [by] decid[ing] whether the alleged error substantially influenced the jury. If it did not, the error is harmless." In making the relevant determinations, the court "consider[s] the potential effect of the excluded evidence in light of all the evidence that was presented to the jury." *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016).

The jury's verdict of acquittal on two of the rape charges reflects its skepticism of S.D.'s credibility. However, with regard to the rape charge on which it convicted Haas, there was

---

[2] The Court therefore does not reach the Court of Appeals' analysis of Rules 2:607, 2:608, and 2:610, and *Clinebell*. Rather, the Court vacates that portion of the published opinion and defers its consideration of that matter to another day.

3

corroborating forensic evidence.  On that charge, S.D. accused Haas of raping her on Fox's bed on January 22, 2016.

A police officer testified at trial that she recovered sheets and blankets from Fox's bed. Fox testified that she had not washed the sheets since the date of the offense.  A forensic examiner with the Department of Forensic Science testified that she examined the fitted sheet recovered from Fox's bed and sampled seven stains in which sperm cells had been identified. She testified that she identified one stain that included a mixture of multiple contributors' DNA. She testified that the probability that the DNA in the sperm fraction from that sample was contributed by a person other than Haas or someone biologically related to him was one in more than 7.2 billion.  She testified that the sample included insufficient material from which to identify the other contributors.

Attempting to explain how his DNA may have been found on Fox's bedsheet, Haas testified in his defense that Fox invited him over for dinner one evening after January 22, 2016, and performed fellatio on him in the bathroom.  He suggested that she may have deposited his ejaculate into a towel.  During his cross-examination of the Commonwealth's forensic expert, he elicited testimony that although the sample in which his DNA had been detected was a mixture of his and others' DNA, the presence of his DNA in a mixed sample was not evidence that all the DNA in the sample was placed there contemporaneously.  Rather, such a mixture could result from someone applying his ejaculate to a pre-existing stain because it is forensically impossible to establish a chronology of when the various DNA material was left there.

On appeal, Haas argues that the forensic evidence is inconclusive because it does not exclude the possibility that someone used his ejaculate to fabricate evidence that he had had sex on Fox's bed.  However, according to Haas' testimony at trial, his intimate encounter with Fox

4

occurred on the same evening that S.D.'s younger sister, C.F.D., later became alarmed by some text messages between Haas and S.D. that she discovered on his mobile phone. C.F.D. told Fox about the messages. Fox testified that this conversation occurred in "about February." S.D. testified that she and Haas had stopped exchanging text messages before February 16. Consequently, the latest possible date supported by the record for an intimate encounter between Haas and Fox consistent with his account was before February 16. Yet the investigation did not begin until a month later, on March 16, when Fox overheard S.D. tell her doctor that she was sexually active and identify Haas as her partner.

It is true that "when the evidence is wholly circumstantial . . . all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Rogers v. Commonwealth*, 242 Va. 307, 317 (1991) (internal quotation marks omitted). However, "[t]he hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of" the defense. *Cook v. Commonwealth*, 226 Va. 427, 433 (1983).

Haas' hypothesis requires someone to have deposited his ejaculate on Fox's bed sometime in February, at least a month before S.D. made any accusation about him and any investigation began, or to have preserved it elsewhere to be deposited there later, so that police would discover it in the course of such an investigation. Haas had the opportunity to present this hypothesis to the jury, which declined his invitation to draw that inference and discount the forensic evidence at trial. "[T]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017).

5

Similarly, with regard to the indecent liberties charge on which the jury convicted Haas, S.D.'s testimony was corroborated in part by C.F.D. C.F.D. testified that she returned home from school one day and found S.D. and Haas together in the bathroom. S.D. was wrapped in a towel, suggesting that she had just finished bathing. This was consistent with S.D.'s testimony that Haas had entered the bathroom while she was in the bath and that he touched her vagina, but that he stopped and she got out of the bath and wrapped herself in a towel when they heard the front door open. Notably, C.F.D.'s testimony about the events of Halloween 2015, when S.D. accused Haas of raping her the first time, was inconsistent with S.D.'s testimony in several material respects, including their positions in Haas' truck when she went out to check on them and their demeanor when they eventually returned to the house. The jury acquitted Haas of the rape charge arising from that accusation.

The jury's decision to acquit Haas on charges based solely on S.D.'s uncorroborated testimony but to convict him when her testimony was corroborated by other evidence further indicates that, had Barber's proffered testimony been admitted, it would not have affected the outcome. Consequently, any error by the Court of Appeals in affirming the circuit court's ruling excluding the proffered testimony is harmless.

For these reasons, this Court vacates the judgment of the Court of Appeals in part, affirms it in part, and affirms the judgment of the circuit court. This order shall be published in the Virginia Reports and shall be certified to the Court of Appeals of Virginia and the Circuit Court of Chesterfield County.

JUSTICE MIMS, with whom JUSTICE POWELL and JUSTICE McCULLOUGH join, concurring.

6

I agree with the majority that there is sufficient evidence to establish that any error by the Court of Appeals in this case is harmless. I write separately because I believe that when a witness states to a third party that he or she has lied or will lie in a judicial proceeding or to initiate a criminal investigation, the testimony of the third party to that effect might be admissible under Rule 2:607(a)(viii) to impeach the testimony of that witness in connection with that proceeding or investigation notwithstanding any limitations in Rule 2:608.

In this case, the circuit court ruled that S.D.'s statement to Barber did not express an intention to lie. While the meaning of S.D.'s statement may have been a question of fact for the jury to decide, there is no dispute that the alleged statement expressed, at most, a possible intention to lie about Barber's boyfriend. It does not express an intention to lie in this case or about Haas. Consequently, it was at most evidence of a possible propensity to lie in general, and such evidence falls within the scope of Rule 2:608.

Since the majority has found any error to be harmless and has vacated that portion of the Court of Appeals' opinion that analyzes Rules 2:607 and 2:608, the determination of their scope must be deferred to another day.

A Copy,

Teste:

Clerk

7