PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

OPINION BY
v. Record No. 230914                    CHIEF JUSTICE S. BERNARD GOODWYN
                                        February 20, 2025
JEROME LEE WILKERSON

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in determining that the

evidence presented at trial was insufficient to sustain a conviction for possession of a controlled

substance.

## I. BACKGROUND

On February 20, 2020, Sergeant Hoggard of the Norfolk Sherriff's Office received

information that there was cocaine in cell block 2K of the Norfolk City Jail. After the inmates

were all secured in one area, Sergeant Hoggard and a team searched cell block 2K with a

narcotics-detecting canine.

At the time of the search, there were between 30 and 40 inmates residing in cell block

2K, which had room for up to 144 inmates. The cell block had an open "day room" with tables

and chairs, and also had twelve "huts," which were separate sections that could be locked down

independently. Each hut contained twelve bunks. At the time of the search, about four inmates

were using hut number one for sleeping, including Jerome Lee Wilkerson.

When the team searched hut number one, the canine alerted to a personal property bag

which was located on Wilkerson's bunk. The search revealed that the bag contained two rolls of

toilet paper and "assorted paperwork bearing [Wilkerson's] name," including a medical form.

Hidden inside one of the toilet paper rolls was a plastic bag with a white powder substance in it;

the substance was later confirmed to be 1.03 grams of powder cocaine.

Sergeant Hoggard spoke with Wilkerson in Sergeant Hoggard's office. During that conversation, Wilkerson acknowledged that the property bag belonged to him, but denied knowing about any powder substance in it. Sergeant Hoggard then asked if anyone else ever got into Wilkerson's property bag, to which Wilkerson responded: "F**k no. Ain't no one goes into [] my bag. I watch my bag. They know better. I check my bag every 15 minutes." Sergeant Hoggard did not ask any further questions about how Wilkerson checked his bag.

Wilkerson was charged in the Circuit Court for the City of Norfolk with knowingly or intentionally possessing a controlled substance in violation of Code § 18.2-250.

At the bench trial, Sergeant Hoggard testified that hut number one was the place where Wilkerson "had been observed sleeping and relaxing before." Sergeant Hoggard said that Wilkerson appeared to be the only person using the bunk bed where his property bag was found.

Sergeant Hoggard explained that inmates could keep their property bags at all times in their assigned cell blocks, but were required to leave their bags in their cell blocks whenever they went somewhere else, such as instances when they had to attend court, conference with an attorney, or receive medical care. Sergeant Hoggard testified that the doors of the huts were "primarily kept open" and would be closed if there were a lockdown or other issue in the cell block. Sergeant Hoggard stated that anybody in the cell block "would have access" to any of the huts.

Sergeant Hoggard did not know the occasion upon which Wilkerson had last left cell block 2K before the search. He explained that the sheriff's office is supposed to log inmates in and out of the cell block, and that he did not have those records with him, but that he had reviewed surveillance video footage of cell block 2K to "determine if anybody went near that area." When the Commonwealth asked a follow up question about the surveillance video,

2

Wilkerson's counsel objected to any additional testimony related to the video footage on the basis of hearsay and not having been provided any video footage through discovery. The Commonwealth acknowledged that the video had not been provided to him either and agreed to "leave it alone." No additional testimony regarding the surveillance video was elicited.

After the Commonwealth rested, Wilkerson moved to strike, arguing that the Commonwealth had failed to prove that he had knowledge of the cocaine, since anyone in the cell block had access to the hut where Wilkerson's bag was found. The circuit court denied Wilkerson's motion to strike.

Wilkerson offered no evidence. He then renewed his motion to strike. In denying Wilkerson's renewed motion to strike, the circuit court stated: "I think but for the statement to Sergeant Hoggard, you might have something, but I think the statement to Sergeant Hoggard makes the case." The circuit court found Wilkerson guilty of possessing a controlled substance and sentenced him to nine months' incarceration.

Wilkerson appealed to the Court of Appeals, which reversed his conviction in an unpublished opinion. *Wilkerson v. Commonwealth*, No. 1385-22-1, 2023 Va. App. LEXIS 694, at *1 (Oct. 17, 2023) (unpublished). The Court of Appeals stated that the circuit court's reliance on Wilkerson's statement regarding no one else going into his bag was "problematic," explaining that the statement was not a confession and that "without more," the statement could not prove that Wilkerson knowingly possessed the cocaine. *Id.* at *6-7.

The Court of Appeals noted that the part of Wilkerson's statement that he checked his bag every 15 minutes "showed the evident concern . . . for the ease with which fellow inmates could readily access it," and further noted that if Wilkerson were out of the cell block, he would not be able to check his bag. *Id.* at *7. The Court of Appeals stated that "[n]otwithstanding

3

Wilkerson's admission that he checked his bag every 15 minutes, there is no evidence that he did so, or that Wilkerson was with his bag immediately preceding the lockdown," nor any evidence "that Wilkerson was in his cell block immediately prior to the search"; there was only evidence that Wilkerson had been there at some time "before" the search. *Id.* at \*8-9.

The Court of Appeals found it notable that "although it was available, the Commonwealth did not introduce surveillance video evidence of Wilkerson on his bunk or in his hut prior to the search," and thus "Sergeant Hoggard's testimony that Wilkerson was in his hut 'before' supplies no useable inferences to support the finding that Wilkerson had conscious knowledge of the presence, nature, and character" of the cocaine. *Id.* at \*10. The Court of Appeals concluded that "Wilkerson's admission of occupancy and ownership of a jail bunk and property bag accessible to the general jail population, without more, was insufficient to show conscious knowledge of the presence, nature, and character of the cocaine," and thus "the evidence was insufficient to prove Wilkerson guilty beyond a reasonable doubt." *Id.* at \*12.

The Commonwealth appealed to this Court. We granted one assignment of error: "The Court of Appeals erred when it found the evidence was insufficient to sustain appellant's conviction for possession of controlled substances."

## II. ANALYSIS

The Commonwealth argues that there was sufficient evidence before the circuit court to support the finding that Wilkerson knowingly possessed the cocaine found in his property bag which was on his bunk. It asserts that the Court of Appeals failed to view this evidence collectively and in the light most favorable to the Commonwealth, and failed to give proper deference to the circuit court's factual findings and reasonably-drawn inferences. The Commonwealth further argues that the circuit court was entitled to reject Wilkerson's hypothesis

4

of innocence—that someone else placed the drugs in Wilkerson's roll of toilet paper in Wilkerson's property bag—because that hypothesis is not supported by the evidence, and further, because Wilkerson's own statement that he checked his bag every 15 minutes and that no one goes into his bag, refutes that hypothesis of innocence. We agree.

As noted previously, after hearing evidence presented at trial, the circuit court found Wilkerson guilty. We begin our analysis by considering the proper standard of appellate review of the circuit court's decision.

An appellate court reviews a lower court's findings of fact "with the highest degree of appellate deference." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (citation omitted). "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (internal quotation marks omitted). Thus, when reviewing whether the evidence was sufficient to convict a defendant of a criminal offense, an appellate court has a "limited" role, and "[t]he only relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

An appellate court must "review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court," and must "accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence" in making its determination. *Id.* (citations omitted). Reasonable inferences drawn by the factfinder "cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*." *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (internal quotation marks omitted).

Code § 18.2-250 makes it a criminal offense "for any person knowingly or intentionally to possess a controlled substance." To prove a possession offense, the Commonwealth must "produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the contraband with knowledge of its nature and character." *Garrick*, 303 Va. at 183. To prove constructive possession, the Commonwealth "must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the contraband and that the contraband was subject to his dominion and control." *Id.*

Ownership or occupancy of a place where controlled drugs are found does not create a presumption that the person "either knowingly or intentionally possessed" the drugs. Code § 18.2-250(A). Further, "[m]ere proximity to a controlled drug is not sufficient to establish dominion and control." *Drew v. Commonwealth*, 230 Va. 471, 473 (1986). However, proximity "is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed" an item. *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008) (discussing constructive possession of a firearm).

Constructive possession can be proved solely by circumstantial evidence, which is sometimes "the only type of evidence which can possibly be produced." *Garrick*, 303 Va. at 183-84 (citation omitted). "A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any." *Id.* at 184 (quoting *Toler v. Commonwealth*, 188 Va. 774, 780 (1949)).

Usually, a circumstantial fact, standing alone, "will be insufficient to establish a basis for a conviction." *Id.* Even though a "single piece of evidence may not be sufficient, the combined

6

force of many concurrent and related circumstances may lead a reasonable mind irresistibly to a conclusion." *Id.* (brackets and ellipsis omitted). Thus, "[i]n determining whether the evidence is sufficient to permit a rational factfinder to conclude that a defendant constructively possessed an item, 'an appellate court must consider *all* the evidence admitted at trial,'" and must not view the individual facts in isolation. *Id.* at 183-84 (quoting *Bolden*, 275 Va. at 147) (emphasis added). "To be sufficient to support a conviction, the combined circumstances 'must prove guilt beyond a reasonable doubt but not beyond all doubt.'" *Id.* at 184 (quoting *Barney*, 302 Va. at 98); *see also Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) ("The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs" in the place where they are found.).

When all evidence to prove guilt is circumstantial, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Smith*, 259 Va. 780, 783 (2000)). This "reasonable hypothesis of innocence" principle is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Id.* at 464 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). If the evidence supports a reasonable hypothesis of innocence, then there exists a reasonable doubt as to the defendant's guilt, and the evidence cannot support a conviction. Conversely, "[w]here circumstantial evidence is sufficient to exclude every [proffered] reasonable hypothesis of innocence, it is sufficient to support a conviction." *Cook v. Commonwealth*, 226 Va. 427, 433 (1983).

Importantly, "[t]he hypotheses [of innocence] which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of defense counsel." *Id.* (citing *Turner v. Commonwealth*, 218 Va. 141, 148-49 (1977)). This is not to say that the

defendant bears the burden of proving a reasonable hypothesis of innocence or of introducing evidence of innocence, for the burden of proving a defendant guilty beyond a reasonable doubt rests fully on the Commonwealth. *See Hubbard v. Commonwealth*, 276 Va. 292, 295 (2008) (explaining that a criminal defendant "cannot be convicted of a crime unless the Commonwealth meets its burden" of proving "every essential element of the charged crime beyond a reasonable doubt") (citation omitted). Instead, this requirement—that a reasonable hypothesis of innocence must flow from the evidence—simply reflects the reality that a defendant's asserted hypothesis of innocence must be supported by at least some evidence, because if it is not, it cannot create a "reasonable" doubt regarding the defendant's guilt.

In any event, the question for our review on appeal is not whether there was "some evidence" to support a defendant's hypothesis of innocence, because the totality of the circumstantial evidence may allow a factfinder to reject an asserted hypothesis of innocence as unreasonable. *See Moseley*, 293 Va. at 464-65 (citation omitted). Instead, the "pertinent question" on appeal is "whether a rational factfinder, in light of all the evidence, could have *rejected* [the defendant's] theories of innocence and found him guilty beyond a reasonable doubt." *Id.* (emphasis added). This is because "the factfinder ultimately remains responsible for weighing the evidence," and the factfinder is the one who "determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypothesis of innocence advanced by a defendant." *Id.* at 464 (citing *Hudson*, 265 Va. at 513).

Viewing the evidence under the standard of appellate review required by our precedents, we agree with the Commonwealth that there was sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that Wilkerson knowingly possessed the cocaine found in his roll of toilet paper, which was in his personal bag located on his bunk.

Wilkerson argues that our prior decisions in *Cordon* and *Young*, in which we reversed convictions of constructive possession, are analogous. We disagree.

In *Cordon*, cocaine was found inside a cooler in the home of the defendant's uncle; the cooler was located in a bedroom that the defendant had previously called "his." *Cordon v. Commonwealth*, 280 Va. 691, 697 (2010). We held that the evidence there was insufficient to support a conviction for constructive possession because the defendant was not known to be at that house for the previous two days, there was no evidence that the defendant owned the cooler, and no other evidence linked the defendant to the cocaine. *Id.* The evidence in *Cordon* could not "support a conclusion beyond a reasonable doubt" that the defendant "knew that cocaine was in the cooler in the bedroom and that it was subject to his dominion and control." *Id.*

In contrast with the evidence in *Cordon*, the evidence here shows that Wilkerson definitively claimed ownership of the property bag where the cocaine was found and stated that no one else accessed that bag. Wilkerson was also in hut number one at some time "before" the search and admitted that the bunk on which his bag was found was "his" bunk. Since Wilkerson slept in hut number one in the bunk he claimed as his, it is reasonable to infer that Wilkerson had been there at some point during the day of the search.

This case is also distinguishable from *Young*. In *Young*, an unidentified pill was found in the defendant's purse, inside a prescription bottle for a different medication that had another individual's name on the label. *Young v. Commonwealth*, 275 Va. 587, 589 (2008). The officer conducting the search did not know what the pill was; a lab analysis later identified the pill as morphine. *Id.* The individual whose name was on the prescription bottle had a valid prescription for morphine, and testified at trial that the morphine belonged to her and that she had accidentally left the pill bottle in the defendant's car. *Id.* at 590. We reversed the defendant's

9

conviction for constructive possession, explaining that there was no evidence of any "acts, statements or conduct" of the defendant that tended to show guilty knowledge, and further explained that not even the officer knew what the pill was, so there was "no reason to infer that the defendant was any better informed." *Id.* at 592. Because "[t]he ambiguous circumstantial evidence concerning the appearance of the bottle and its contents [was] as consistent with a hypothesis of innocence as it [was] with that of guilt," the evidence was insufficient to support the conviction. *Id.*

In this case, however, there is no "ambiguous" circumstantial evidence that is equally consistent with both Wilkerson's guilt and Wilkerson's hypothesis of innocence. In finding Wilkerson guilty, the factfinder did not have to arbitrarily choose one plausible theory of events over another, because Wilkerson's hypothesis of innocence that someone else must have placed the cocaine in his property bag is completely unsupported by the evidence. Wilkerson's own statement—that "no one goes into [] my bag. I watch my bag. They know better. I check my bag every 15 minutes"—was credited by the factfinder; that statement actually contradicts Wilkerson's hypothesis that someone else placed the cocaine in his bag. There is no evidence that anyone else had ever accessed Wilkerson's bag. There is no evidence that Wilkerson had been away from his bag for any length of time before the search or that anyone else had entered hut number one soon before the search. There is no evidence that Wilkerson was not in the cell block at any time during the day of the search. There is also no evidence that anyone else at the jail had animosity toward Wilkerson. Further, there is no evidence that anyone else had cocaine to get rid of when the search began, or if they did, how they would have had the opportunity to hide their cocaine inside Wilkerson's toilet paper roll inside his property bag without

10

Wilkerson's knowledge, given Wilkerson's vigilant watch over his bag.* Alternatively, if another inmate placed their cocaine into Wilkerson's toilet paper roll and property bag, without knowing that a search was about to happen, they could not hope to retrieve it without Wilkerson's knowledge and consent, given how closely Wilkerson watched his property bag.

We conclude that a rational factfinder could reject as unreasonable Wilkerson's unsupported hypothesis that someone else put the cocaine in Wilkerson's toilet paper roll that was found in his property bag on his bunk.

We find this case more similar to *Garrick*, where we held that the evidence was sufficient to support a conviction for constructive possession of contraband found in the glovebox of the vehicle Garrick was found sleeping in. *Garrick*, 303 Va. at 184-85. The evidence showed that Garrick drove the vehicle three days a week, that Garrick had paid for maintaining the vehicle, and that the vehicle belonged to Garrick's mother. *Id.* However, there was no evidence that Garrick's mother, or anyone else, ever drove the vehicle. *Id.* We explained that, "[b]y inference, a rational factfinder could conclude from the evidence offered that Garrick was the vehicle's primary, if not exclusive, driver." *Id.* Since the factfinder in *Garrick* "implicitly rejected" the inference that Garrick's mother drove the vehicle, we explained that it was error for the Court of Appeals to oppositely infer that Garrick's mother regularly used the vehicle. *Id.* at 186-87. We held that the combined evidence was sufficient to allow a rational factfinder to find that Garrick was aware of the contraband's presence. *Id.* at 186.

---

*Wilkerson stresses the fact that the Commonwealth "could have easily presented" the available surveillance video footage of cell block 2K, or at least Sergeant Hoggard's "summary of the footage," that could demonstrate whether or not Wilkerson had accessed his bag shortly before the search. However, Wilkerson fails to acknowledge that his own counsel objected to the admission of any testimony related to the video footage. Regardless, we do not find that the absence of the surveillance video evidence is dispositive in this case.

11

In this case, the combined evidence was sufficient to support Wilkerson's conviction. The evidence showed that the cocaine was concealed within a toilet paper roll inside Wilkerson's property bag, and not just hastily tossed into the bag. Wilkerson claimed ownership of the property bag, which was on Wilkerson's bunk in hut number one. Wilkerson asserted that he watched his bag diligently and did not let anyone else go into it. Wilkerson had been seen sleeping and relaxing in hut number one at some time "before" the search.

The circuit court, as the factfinder, was entitled to weigh Wilkerson's statement and believed that the statement "makes the case." Although the Court of Appeals believed that Wilkerson's statement was self-contradictory, the Court of Appeals should not have completely discredited Wilkerson's statement, which was evidence properly before the circuit court. *See Vasquez v. Commonwealth*, 291 Va. 232, 247 (2016) (explaining that "an appellate court must consider all the evidence admitted at trial that is contained in the record, not limiting itself to merely the evidence that the reviewing court considers most trustworthy") (internal quotation marks omitted).

Through Wilkerson's statement, the Commonwealth presented "evidence of . . . statements . . . of the accused or other facts or circumstances" that "tend to show" that Wilkerson knew about the presence and character of the cocaine, and that the cocaine was subject to his dominion and control. Given the factual circumstances of how and where the cocaine was hidden, and the lack of any evidence that someone else put the cocaine in Wilkerson's property bag, the inference that Wilkerson put the cocaine into the bag himself is not "so attenuated that [it] push[es] into the realm of *non sequitur*," and should therefore not be upended on appeal.

III. CONCLUSION

Again we emphasize that an appellate court has a limited role in such an instance as this. When viewing the evidence in the light most favorable to the Commonwealth, and when affording the Commonwealth the benefit of all reasonable inferences deducible from the collective evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Wilkerson knew of the presence and character of the cocaine, and that the cocaine was subject to his dominion and control. The circuit court's finding of guilt was not plainly wrong or without evidence to support it. Therefore, we hold that the Court of Appeals erred in concluding otherwise. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

*Reversed and final judgment.*