COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judge Humphreys and Senior Judge Annunziata
Argued by videoconference


TERRY LYNN BLANDING
                                                        MEMORANDUM OPINION[*] BY
v.         Record No. 1339-19-2              CHIEF JUDGE MARLA GRAFF DECKER
                                                            DECEMBER 15, 2020
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Joseph M. Teefey, Jr., Judge

Makiba Gaines (The Gaines Law Firm, P.L.L.C., on briefs), for
appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Terry Lynn Blanding appeals his bench trial conviction for arson of an occupied dwelling

in violation of Code § 18.2-77.  He argues that the evidence was insufficient to prove both that

he was the criminal agent and that the dwelling was burned within the meaning of the statute.

We hold that the evidence supports the trial court's finding that the appellant was the person who

set the fire.  We also conclude that the appellant's argument that the dwelling was not burned is

procedurally barred under Rule 5A:18.  Consequently, we affirm the conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I.  BACKGROUND[1]

The appellant was charged with arson of an occupied dwelling that occurred on January 20, 2018.  At trial, the evidence established that in January 2018, the appellant and his fiancée, Amanda Kingery, shared a rented residence on Vaughn Road in Dinwiddie County, where they lived with Kingery's three children.  The appellant and Kingery had been dating and living together intermittently for more than three years.  When they had disagreements, the appellant "move[d] out" and went to his mother's home.  On the day of the fire, the appellant had "just recently" returned to the Vaughn Road residence, where he had a significant quantity of clothes and other personal possessions.

The appellant and Kingery spent that day together but later went their separate ways because Kingery was scheduled to work.  When Kingery opted not to go to work, she tried unsuccessfully to reach the appellant and then arranged to meet a girlfriend.  Kingery left the house with her children, planning to drop them off in various locations for the evening.  She closed and locked the front door as they left.  Their dog, Boss, who was the appellant's dog when Kingery and the appellant started dating, was inside the home as he "always" was.  Kingery's daughter, T.D., left her bedroom door open, as she "always" did, because Boss liked to sleep on her bed.  The family's new puppy was in a crate in the kitchen.

While Kingery was out with her girlfriend, she and the appellant arranged to meet at Omega's Bar in Hopewell.  When Kingery arrived at Omega's around 8:00 or 8:30 p.m., the appellant was "pretty intoxicated" and the couple argued.  The appellant yelled, cursed, and then left the bar alone, slamming the door as he departed.

---

[1] When considering a challenge to the sufficiency of the evidence on appeal, this Court views "the evidence . . . [and] all reasonable inferences fairly deducible" from it "in the light most favorable to the Commonwealth," the party who prevailed in the trial court.  Hancock v. Commonwealth, 12 Va. App. 774, 778 (1991).

Shortly after 10:00 p.m., while Kingery was still at Omega's, some of her children returned to the Vaughn Road residence with their father, Dustin Drumheller. They saw smoke and heard the fire alarm as they approached the residence. Boss, one of the dogs that was inside the home when they left and was never intentionally left outside the house, was on the front porch. Drumheller used the house key belonging to T.D. to open the front door. He noticed that the bottom lock was secured, and he saw no sign of forced entry. Drumheller helped T.D. rescue the puppy from its crate. He noticed that T.D.'s bedroom door was closed and felt "heat coming off" it. At some point the fire department was called.

At 10:17 p.m., T.D. phoned her mother, and in response, Kingery rushed home from Omega's. Kingery, who was crying, phoned the appellant and told him that "[their] house [was] on fire." The appellant called her "a crazy bitch" and hung up.

Once Kingery was at the house, the appellant telephoned her. In a "normal" tone of voice, he asked, "What's going on?" and "How much of the house is burnt?" Kingery "asked him where he was." The appellant did not answer and "just kept asking" what was happening and how much of the house had been damaged.

When Kingery was permitted to enter the house, she noticed that her daughter's room "was burnt up" and the entire house, while not "physically burned to the ground," was contaminated with soot and gasoline. She also observed that T.D.'s bedroom window was "shattered out" and three of the knobs on the gas stove in the kitchen were in the "on" position. In the bedroom that Kingery shared with the appellant, a red gasoline can and a beer bottle were together on a nightstand. These items had not been in the home when she left. Kingery also noticed that "[alm]ost . . . everything that [the appellant] owned was gone." She saw a few hangers with articles of his "cloth[ing] hanging off" and a single shoe, from which she deduced that the items were removed "in a hurry."

About 4:00 a.m., while Kingery's mother was outside the residence after the fire, she saw the appellant's truck drive slowly by the house. When she attempted to follow it in her own vehicle, the truck "took off." The appellant never returned to the home.

Investigator Steve Shifflett, of the Dinwiddie County Sheriff's Office, and Deputy Fire Marshal Nick Sheffield, of the County's Fire and Emergency Medical Services, examined the residence together. They immediately smelled gasoline inside the home. Samples of numerous items taken from throughout the home tested positive for gasoline. Sheffield observed "damage" to the outside front left corner of the house and noted "walking around [the outside of] the house [that there was] no real *further* heavy fire damage" visible. (Emphasis added). Shifflett and Sheffield noted that T.D.'s bedroom had sustained significant fire damage. Shifflett testified that blankets, towels, and clothing on T.D.'s bed "were all charred." The record also contains various photographs that Shifflett took after the fire. Those photos depict a burned mattress and a charred headboard. Also visible in the photos is a ceiling fan with blades perpendicular rather than parallel to the floor. Additionally, the photos show apparent charring to the wall and ceiling adjacent to the bed and broken window. Several photos show the broken glass from the window. The glass is in pieces outside the window frame, on the front porch rather than inside the bedroom. Finally, photos showing the full exterior of the house from all sides provide no indication of forced entry of a window or door.[2]

Deputy Fire Marshal Sheffield concluded that the fire was intentionally set by pouring gasoline on the mattress and other flammable items in T.D.'s bedroom and setting the items on fire. He described the fire as "air-limited," explaining that a closed door significantly reduces the air available to fuel a fire. Sheffield noted "obvious[] burning in the room, soot, burn

_____

[2] The only visible damage to a point of entry was to the window that "shattered out" rather than inward.

damage from the fire, direct flame contact." He explained that typically "at the floor level" in residential fires, "you would see a lot of charring towards the bottom of [a] door," which would indicate "low burn." Sheffield observed that T.D.'s room did not sustain "a lot of low burn" and "[m]ost of it was up higher going towards the bed." He also said that if there "had [been] a lot of burning . . . down low, you obviously would have seen . . . a lot of heavier damage to that wall[,] to structural members of the house."

Sheffield testified specifically regarding a photograph marked 102. That photo shows the burn patterns on the portion of the wall located above the side of the bed and adjacent to the window. He observed that the photograph showed "a lot of heavy fire in th[at] area." Sheffield indicated that "[s]ometimes . . . when you get the heat . . . from [a fire], it is going to burn clean" and that "if [he] were to take a cinder block and . . . burn it, . . . it is eventually just burn[ed] clean because there is nothing else to burn." He further explained, "That is why you see white" on the wall in the photo.

The Commonwealth also offered evidence of the appellant's cellular telephone records and related cell tower location information from the night of the fire. Special Agent Jeremy D'Errico of the Federal Bureau of Investigation, an expert in "historical cell site analysis," examined the cellular data. D'Errico determined based on this information that on the night of the arson, the appellant made calls consistent with his being in the area of Omega's Bar at 9:04 and 9:09 p.m. He further concluded that the appellant made another call consistent with his presence in the area of the Vaughn Road residence at 9:57 p.m. Finally, the agent noted that the appellant made two more cell phone calls at 10:18 and 10:20 p.m. that were again consistent with his being back in the area of Omega's Bar. Additional evidence established that the distance between Omega's Bar and the Vaughn Road residence was approximately 18.3 miles and the travel time between the two locations was twenty to twenty-six minutes.

The appellant testified on his own behalf. He admitted that he had two prior felony convictions. He also conceded that after drinking on the evening of January 20, 2018, he entered the Vaughn Road residence through the front door and removed his personal belongings from the bedroom he shared with Kingery. The appellant said that he carried the items from the closet to his vehicle on their hangers and took the remaining smaller items out wrapped in a bed sheet. According to the appellant, he did so around 6:00 or 7:00 p.m., before he met Kingery at the bar. He said that he "tried to talk to [Kingery]" about their relationship while at Omega's but that Kingery did not want to discuss it, so he left the bar. He denied going to the Vaughn Road residence after he left Omega's. Although the appellant offered alibi evidence for part of the time between when he left Omega's and when the fire was detected, that evidence was admitted through a witness with multiple prior convictions for felonies and misdemeanors implicating her credibility.

In a motion to strike and in closing argument, the appellant contended that the circumstantial evidence was insufficient to prove that he was the arsonist. He asserted that others could have had keys to the house or entered through the broken window observed after the fire. The appellant made no argument that the evidence was insufficient to prove a burning.

The trial judge ruled that the fire resulted from arson and caused "damage to the house," which was "an occupied dwelling." Consequently, he determined that the only issue in the case was whether the circumstantial evidence proved beyond a reasonable doubt that the appellant was the perpetrator.

The judge found Kingery highly credible. He made numerous additional express findings of fact and, significantly, drew various inferences from the evidence that were relevant to his ruling. He emphasized that the appellant acknowledged having a disagreement with Kingery, wanting "to terminate the relationship," and "remov[ing] all of his belongings from the house."

- 6 -

The judge pointed out that the dog that the appellant had brought into the relationship, although inside the house when Kingery and her children left that night, was outside when the fire was discovered later. Based on the evidence, the judge inferred that the appellant let the dog out so that it would not perish in the fire. Additionally, the judge noted that when the appellant spoke to Kingery about the fire by phone, instead of asking whether anyone had been hurt in the fire, he asked only "how much [of the house] was destroyed." Based on this evidence, the judge inferred from the appellant's question that he knew that no one was in the house at the time of the fire because he was the one who had set it.

The judge also noted that the residence remained locked when Kingery's daughter arrived home and no evidence, including the window that broke outward, indicated a forced entry. He further observed that the cell phone data "was consistent with" the appellant's setting the fire. Finally, the judge found from the evidence that the appellant drove by the home later because he still wanted to know how much damage had occurred.

The judge, as the trier of fact, concluded that the circumstantial evidence proved beyond a reasonable doubt that the appellant started the fire. The appellant was sentenced to fifteen years in prison with eight years suspended on various conditions. He subsequently filed timely post-trial motions to suspend the final judgment and set aside the verdict based on a claim of insufficient evidence to prove a burning. The appellant did not obtain a ruling on either motion before the expiration of twenty-one days following entry of the sentencing order.

## II. ANALYSIS

The appellant challenges the sufficiency of the evidence on two grounds. He argues that the evidence failed to prove that he was the criminal agent in the arson and that the fire resulted in a "burning" within the meaning of Code § 18.2-77.

The Court's analysis is based on well-established legal principles. When considering the sufficiency of the evidence on appeal, this Court views the evidence in the "light most favorable" to the Commonwealth, the party who prevailed in the trial court. See, e.g., Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)). In doing so, we defer to the trial court's findings regarding the credibility of the witnesses and the inferences to be drawn "from basic facts to ultimate facts." See Davis v. Commonwealth, 65 Va. App. 485, 500 (2015) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In the end, the reviewing court "ask[s] whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)).

The fact finder "is entitled to consider all of the evidence," direct and circumstantial, "in reaching its determination.'" Moseley, 293 Va. at 463 (quoting Commonwealth v. Hudson, 265 Va. 505, 512-13 (2003)). Consequently, appellate review requires a "totality-of-the-evidence analysis" rather than a "fragmented assessment of the record." Id. at 464, 466. "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion [of guilt].'" Muhammad v. Commonwealth, 269 Va. 451, 479 (2005). "These principles apply . . . to bench trials no differently than to jury trials." Vasquez v. Commonwealth, 291 Va. 232, 249 (2016).

A. Proof of Criminal Agency

The appellant argues that the evidence is insufficient to prove that he was the criminal agent because it leaves open the reasonable hypothesis that someone else set the fire.

In a prosecution for arson, the Commonwealth bears the burden of proving that "the accused was [the] guilty agent in the burning." Hickson v. Commonwealth, 258 Va. 383, 387 (1999) (quoting Augustine v. Commonwealth, 226 Va. 120, 123 (1983)). Arson is "a crime of

stealth" in that the "perpetrator is seldom observed, seldom confesses, and, if skillful, leaves few traces of his presence." Cook v. Commonwealth, 226 Va. 427, 432 (1983). Of course, any element of the offense may be proved using circumstantial evidence as long as that evidence is "sufficient to exclude every reasonable hypothesis of innocence." Id. at 433. The reasonable-hypothesis principle is "simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Taylor v. Commonwealth, 61 Va. App. 13, 30 (2012) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 258 (2003) (*en banc*)).

The fact that a "defendant's theory of the case differs from . . . the Commonwealth['s theory] does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Clanton v. Commonwealth, 53 Va. App. 561, 573 (2009) (*en banc*) (quoting Miles v. Commonwealth, 205 Va. 462, 467 (1964)). To the contrary, by finding the defendant guilty, the fact finder has concluded "by a process of elimination that the evidence does not contain a reasonable theory of innocence." Id. (quoting Haskins v. Commonwealth, 44 Va. App. 1, 9 (2004)). Critically, "[w]hether a hypothesis of innocence is reasonable is . . . a 'question of fact' subject to deferential appellate review." Id. at 572-73 (citation omitted) (quoting Haskins, 44 Va. App. at 9).

The evidence in this case, viewed in light of these longstanding principles, supports the trial court's finding that the appellant was the criminal agent in the arson of the Vaughn Road residence. On the day of the fire, he had just recently reunited with Kingery, with whom he had a rocky relationship. The appellant had been drinking in the hours prior to the fire and was angry with her. When Kingery and the appellant met at the bar that evening to talk about their relationship, he became even angrier, yelling, cursing, and ultimately storming out of the bar. Within about an hour of the appellant's angry departure, someone set fire to the residence he had shared with Kingery. This evidence establishes that the appellant had a motive to set the fire.

- 9 -

The evidence relating to the cell phone calls that the appellant made that night supports the inference that he had the opportunity to commit the offense. Phone records confirmed that the appellant was in *the area* of Omega's Bar at 9:10 p.m. Based on testimony that travel time between Omega's and the residence was about twenty minutes, he could have been back at the residence even before 9:30 p.m. Additionally, phone records confirmed that the appellant made a call from the area of the residence at 9:57 p.m. Therefore, he had more than twenty-five minutes to enter the home with his key, remove his personal belongings, let his dog out of the residence, pour gasoline in various locations inside, turn on the gas stove, start the fire on the bed, and return to the area of Omega's Bar.

In addition to establishing that the appellant had the motive and opportunity to set the fire, other evidence supports the finding that he was in fact the person who did so. By the appellant's own admission, he entered the home that night and removed his personal belongings. He claimed that he did so in a deliberate fashion early in the evening, before he met Kingery at the bar between 8:00 and 8:30 p.m. However, the evidence established that he removed his belongings in a hurry and left a few things behind, including a single shoe and a few articles of clothing. Also, on the nightstand in the master bedroom from which he had removed his clothing, there was a red gas can and an open beer bottle wrapped in a brown paper bag. The record further supports a finding that while at the house, the appellant put his dog Boss outside, raising the inference that he did so to protect the dog from the fire. In light of this evidence, the trial court was entitled to disbelieve the appellant's self-serving testimony that he entered the house earlier in the evening and to conclude instead that he was there later, after his fight with Kingery at Omega's, just in time to use the gasoline to start the fire that Kingery's children detected upon their return shortly after 10:00 p.m. See Marable v. Commonwealth, 27 Va. App. 505, 509 (1998) (holding that the court, in judging witness credibility, may "disbelieve the

self-serving testimony of the accused"); Rollston v. Commonwealth, 11 Va. App. 535, 547 (1991) (noting that a fact finder may rely on parts of the accused's explanation and reject others).

No evidence established that any part of the exterior of the home, other than the window broken out by the fire, had been breached. The house was locked when Kingery left, and likewise it was locked when her children returned home and discovered the fire. Although one of the windows to the residence had been broken out, the judge found that the location of the glass outside the window rather than inside the residence, as depicted in photographs of the scene, indicated that the heat from the fire had broken the window by pushing it outward. Other evidence in the record, which included proof that the fire inside the house burned directly adjacent to that window, supports the trial court's finding on that point. Further, the appellant had a key to the residence, as confirmed by his admission that he entered that evening to remove his clothing, and no evidence established that anyone else with a motive could have entered the locked residence and started the fire that night. See Cook, 226 Va. at 432-33 (upholding an arson conviction where no evidence indicated that anyone other than the defendant was on the premises on the night of the fire, even though others knew a key was hidden under the doormat).

The appellant's responses upon learning about the fire also implicated him as the criminal agent. When Kingery phoned him crying and reported that their house was on fire, he did nothing more than call her a "crazy bitch." When the appellant called her back that night and inquired about the fire, he asked only about the condition of the house, not about her children or the pets, and he refused to tell her his location. Later, when Kingery's mother saw the appellant's truck driving slowly by the house at about 4:00 a.m., he immediately fled instead of stopping to check on the condition of the house or its residents. The fact finder could reasonably have inferred that an innocent person in the appellant's position would have inquired about Kingery, her children, and their pets. It could also have concluded that an innocent person would

have abandoned his anger and come to the house to offer comfort rather than merely driving by and fleeing when his truck was spotted.

The theories of innocence advanced by the appellant fail to take into account the evidence in its entirety; they also do not recognize the authority of the trial court to determine what inferences reasonably flow from that evidence. The trial court's inferences were not plainly wrong, and the evidence as a whole, viewed under the proper standard, supports its findings. Consequently, we affirm the trial court's conclusion that the appellant was the arsonist.

## B. Proof of a Burning of the Dwelling

The appellant argues that the evidence did not prove a "burning" of the residence within the meaning of Code § 18.2-77 and that the trial court applied an incorrect standard by requiring the prosecution to prove only that the dwelling was "damage[d]." The Commonwealth asserts that the appellant did not preserve this challenge for appeal.

## 1. The Contemporaneous Objection Rule

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." The primary reason for "requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." Williams v. Commonwealth, 57 Va. App. 341, 347 (2010); see Bethea v. Commonwealth, 297 Va. 730, 743 (2019) ("Specificity and timeliness undergird the contemporaneous-objection rule . . . ['] so that the trial judge . . . know[s] the particular point being made in time to do something about it.'" (quoting Dickerson v. Commonwealth, 58 Va. App. 351, 356 (2011))).

At trial, the appellant did not challenge the sufficiency of the evidence to prove a burning.[3] On August 26, 2019, nineteen days after entry of the sentencing order, the appellant filed a motion to set aside the verdict. In that motion, he asserted for the first time that the evidence proved mere "damage" to the inside of the residence, not the required "burn[ing]" of a part of the "wood fibers" of the residence. On the same day, he filed a motion to suspend the final judgment order. The record suggests, as recited in a letter from the appellant's counsel, that on August 28, 2019, twenty-one days after entry of the sentencing order, the clerk of court submitted the motion to set aside "to a judge for his consideration . . . but the judge took no action on the motion."

Based on this procedural history, we must conclude that the appellant failed to preserve his challenge to the sufficiency of the evidence to prove a burning. Pursuant to Rule 1:1, a trial court loses jurisdiction over a criminal conviction twenty-one days after entry of the final order. See, e.g., Akers v. Commonwealth, 298 Va. 448, 452 (2020). The appellant made a written motion to set aside the verdict nineteen days after entry of the sentencing order, leaving the court two days in which to act. The trial court did not act on the motion or suspend the final judgment within the twenty-one-day period permitted by Rule 1:1. See id. Because the "appellant did not obtain a ruling from the trial court on his [post-]trial motion, 'there is no ruling [regarding the burning challenge] for [this Court] to review' on appeal, and his argument is waived under Rule 5A:18." See Williams, 57 Va. App. at 347 (third alteration in original); see also Schwartz v. Commonwealth, 41 Va. App. 61, 70-71 (2003) (holding that although the defendant filed a post-trial motion to set aside his convictions, "the circuit court never ruled upon his motion" and the appellate court consequently had "no ruling to review on appeal"), aff'd, 267 Va. 751 (2004)

---

[3] In fact, in her opening statement at trial, the appellant's counsel indicated that she "d[id]n't really anticipate that . . . whether or not there was a fire is going to be what the Court is trying to figure out. It is who actually set it."

- 13 -

(addressing only a different claim of error).[4]  Accordingly, the issue was not preserved for appeal.

## 2.  The Ends-of-Justice Exception

The appellant urges this Court to apply the ends-of-justice exception to Rule 5A:18 to excuse his failure to meet the requirements of the rule with regard to the burning challenge.

The ends-of-justice exception "is narrow and is to be used sparingly."  Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220 (1997)).  In order to successfully invoke this exception, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."  Redman, 25 Va. App. at 221, cited with approval in Ali v. Commonwealth, 280 Va. 665, 671 (2010).  Moreover, the error at issue must be "clear, substantial and material."  Brown v. Commonwealth, 279 Va. 210, 219 (2010) (quoting West v. Commonwealth, 43 Va. App. 327, 338 (2004)).  In other words, the record must establish that "application of the ends of justice exception is necessary to avoid a grave injustice."  Ali, 280 Va. at 671.

In practical terms, these principles mean that to invoke the ends-of-justice exception in the case of a sufficiency challenge, the appellant must provide a record "affirmatively prov[ing]" that he was "convicted for conduct that was not a criminal offense" or "that an element of the offense did not occur."  Redman, 25 Va. App. at 221-22.  A mere failure of proof is insufficient to permit an appellant to invoke the exception.  Brittle v. Commonwealth, 54 Va. App. 505, 514

---

[4] We do not address the impact of the fact that the appellant filed his notice of appeal on August 19, 2019, prior to filing the motions to suspend the sentencing order and to set aside the verdict.  See Commonwealth v. White, 293 Va. 411, 419 (2017) (applying best and narrowest ground principles to conclude that any error was harmless); see also Velazquez v. Commonwealth, 292 Va. 603, 613-15 (2016) (recognizing that although the filing of a notice of appeal typically divests a trial court of jurisdiction to consider post-trial motions, circumstances exist under which a trial court retains authority to act despite the filing of the notice of appeal).

- 14 -

(2009). Otherwise the exception would swallow the rule. Id. at 513-14; see Winslow v. Commonwealth, 62 Va. App. 539, 546 (2013).

Regarding the "burning" element of the offense of arson, Virginia "follow[s] the precedent set by a majority of other states which hold that only a slight burning is necessary." Hancock v. Commonwealth, 12 Va. App. 774, 779 (1991). "[A]ny amount" of "burning" will suffice, "provided there is a perceptible wasting of the fiber of . . . *some part of th[e] building . . .* by fire." Id. (emphasis added) (quoting 2A Michie's Jurisprudence, Arson § 1 (1981)); see also Fulford v. State, 259 A.2d 551, 553 (Md. Ct. Spec. App. 1969) (recognizing that the burning of a permanent fixture is adequate to establish this element of the offense of arson).

The appellant asserts that because no witness specifically described any of the damage to the house as "charring" or provided any other evidence of "the actual burning of any portion of the residence or its fixtures," the evidence not only was insufficient but also "plainly established" that no "burning" of an occupied dwelling occurred.

To support the appellant's attempt to invoke the ends-of-justice exception, the record must *affirmatively prove* that the requisite burning *did not occur*, and the record here simply does not do so. Although the worst of the burning occurred to items that were not part of the residence, the record clearly establishes that structural portions of the residence and its fixtures, including the walls, ceiling, and ceiling fan, were also damaged. Additionally, the record fails to prove that the damage to these parts of the home was *not* "a perceptible wasting of the fiber" of some part of the building or its fixtures. See Hancock, 12 Va. App. at 779 (quoting Michie's, supra, Arson § 1). See generally State v. Jones, 329 S.E.2d 65, 68 n.6 (W. Va. 1985) (holding that proof of "damage" to paint and light fixtures established the requisite "burning" for arson).

Deputy Fire Marshal Sheffield's testimony supports a finding that the portion of the left front corner of the home visible from the outside sustained "heavy fire damage," and

photographs of that damage were admitted into evidence. Photos inside the bedroom where the fire occurred show a wall with a charred appearance. Sheffield's testimony implied *some* "low burn" and *some* fire "damage to th[e] wall," a "structural member[] of the house."

Sheffield testified specifically regarding photograph 102, which the prosecutor noted showed the burn patterns on the portion of the wall above the side of the bed and adjacent to the window that "shattered out" due to the heat. Sheffield observed that the photograph established "a lot of heavy fire in th[at] area." He explained that the "white" on the wall in the photograph indicated that the wall had been "burn[ed] clean." This testimony also permits the conclusion that a perceptible wasting of the fiber of some part of the building or its fixtures occurred, the standard required to prove the burning of a structure. The evidence certainly does not *negate* a finding that the structure was burned, as required to support application of the ends-of-justice exception.

Because the evidence in the record does not affirmatively prove that no burning of the dwelling or its fixtures occurred, the appellant has not established a basis for invoking the ends-of-justice exception to excuse his failure to make a timely objection in the trial court.[5]

### III. CONCLUSION

For these reasons, we hold that the evidence was sufficient to prove that the appellant was the criminal agent in the arson of the residence. We also conclude that the appellant failed to preserve his challenge to the sufficiency of the evidence to prove a burning because he did not obtain a ruling on the issue in the trial court. Finally, we conclude that the ends-of-justice

---

[5] The second exception to Rule 5A:18, the good-cause exception, involves a lack of opportunity to object to a ruling at the time it is made. See Code § 8.01-384(A); Commonwealth v. Amos, 287 Va. 301, 307-09 & n.2 (2014). The appellant does not ask this Court to apply the good-cause exception, and we will not invoke it *sua sponte*. See Jones v. Commonwealth, 293 Va. 29, 39 n.5 (2017) (applying the Supreme Court's Rule 5:25, which contains a similar contemporaneous objection rule and exceptions). Accordingly, we do not consider this exception.

exception to Rule 5A:18 does not apply because the evidence did not affirmatively prove that a burning of the dwelling or its fixtures did not occur. Consequently, we affirm the appellant's conviction.

Affirmed.